The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the 4th Circuit are admonished to draw nigh and give their attention where the Court is now sitting. God save the United States and this Honorable Court. You may be seated. I want to welcome everyone to the 4th Circuit Court of Appeals this morning. We have four interesting cases and four groups of good lawyers. We will begin with the, in the first case, Younger v. Dupree. Mr. Williams? You may have pleased the Court. Brian Williams for Lieutenant Neil Dupree. This appeal presents a pure question of state law, whether Maryland law prevents a prisoner from obtaining administrative remedies when an IIU investigation has been initiated. That question requires interpreting state regulations promulgated by a state agency concerning a state prisoner. Those are exhaustion regulations? Those are exhaustion things? The predicate question before you get to the exhaustion issue, Your Honor, is whether or not Maryland law actually precludes a prisoner from obtaining administrative remedies when there's an IIU investigation. And here, we know that prisoners can get remedies for several reasons. First, the Maryland... Didn't we hold to the contrary in Crowder? This panel made an eerie guess about what, or excuse me, this Court made an eerie guess about what those regulations mean under Maryland law. But we... Are we allowed to disregard that precedential opinion? I'm going to give you three reasons, Your Honor, why Crowder isn't binding on this panel, but then I'm going to explain why you should just certify this question. So first, there's no precedent in this circuit requiring you to follow the decision of a prior panel decision on an issue of state law. Yes, there is. We are required to follow prior panel decisions. They are binding on us, whether they're about federal law or state law. We are not allowed to disregard what another three-judge panel has done in our court. Your Honor, respectfully, there's no precedent requiring this court to follow a prior panel decision on area law. And that makes sense because none of this... What is your authority for that? So this court held in North Carolina Utilities Commission v. FCC, and that's at 552 F. 2nd, 1036, that stare decisis is not, quote, a mechanical formula of adherence to the... Did you brief this issue? That we weren't bound by our own precedent? Your Honor, we... I'm surprised by this. So we identified in our Rule 28J letter... I'm totally surprised by this. That you tell us we aren't bound by... Crowder is a published opinion of this court. If you'd argue it doesn't apply, it's distinguishable or something. But I'm surprised that you'd say it's not precedent. Your Honor, you don't have to reach that question because nothing... There's some exceptions to whether we follow our own precedent. Well, the traditional justifications for stare decisis don't make much sense when a prior panel is... Because this is the exact... It's not just the same issue. It's the same case. Didn't Mr. Crowder join Mr. Dupree's summary judgment motion on exhaustion? That's right, Your Honor. It was the same motion, right? And another panel of our court has said that motion was sufficient. It didn't have to be raised again. And they decided the merits of that motion, and they affirmed. So how on earth could we do something different? Your Honor, in fact, in this case, we actually reached out to Mr. Younger's counsel. We sought to have the briefing in this case put on the same timeframe as the Crowder decision because we had to wait for the Supreme Court's mandate to come down before our briefing could continue. And Mr. Younger's counsel declined to put that on the same schedule. So that's why we're in this situation here where we have this prior decision. But regardless of... And it's on point, at least on some things in here, for sure. Your Honor, you don't have to agree with me that this panel is not bound by that prior decision for us to win. Nothing precludes this panel from certifying this question to the Maryland Supreme Court. And I think an example would... Have you made a motion? Did we certify to the state court? Yeah, we did file a motion. That's pending? Excuse me? That's pending? Yes, Your Honor, that is pending before this court. And I think an example... We're not allowed to waste a state Supreme Court's time. We can't send them something that says... I mean, they have rules about this that say you can certify a question if there's nothing in state law that gives you an answer. And presumably nothing in our law that gives us an answer, right? But our court has already decided this on the same facts, on the same law. It's exactly the same thing. Why would we certify to the Maryland Supreme Court? Wouldn't that be, I mean, an insult to their time? No, Your Honor. This is a critically important question of Maryland state law that the state has an interest in. Did you make a motion to certify in the Crowder case? Your Honor, we do not represent Mr. Crowder. So, no motion to certify was made in the Crowder briefing. And so we are... This is before this court for the first time. And to answer Judge Rustin's question, the Maryland Uniform Certification Act has two requirements. You have to... It must be an issue of state law that is likely to resolve the case. That is satisfied here. The district court ruled that as a matter of Maryland state law, remedies are not available to prisoners. And that's just not accurate. And the second part of the certification issue is whether or not there's a decision of the Maryland Supreme Court, a constitutional provision or a statute that addresses this. And there is none. And just to put a finer point on why you should certify... When did Mr. Younger win his jury verdict? Was that in 2020? I believe it was 2020, Your Honor. It was four years ago. Yes. You want us to certify it and that'll take another year. And then it comes back here for us to affirm like we're going to have to under our precedent. That's maybe another year. Let's just end at 2026. The Maryland Supreme Court is relatively quick, Your Honor, in issuing those decisions. But it's worth... Counsel, did you hear what Judge Rustin said? If you get a favorable ruling from the Supreme Court of Maryland, how does that relieve us of the responsibility to follow our precedent? It's a circular matter. Unfortunately for you, your best would be... I don't know how this case is going to come out, but if it comes out the way that you don't like, is to ask for an on bond hearing from our court. But even if you went to Maryland, if Maryland said so, and I doubt they would even take it up, but they did, we would still say... Because that's not the way we circumvent our own panels in this court. That'd be... That's pretty drastic thing. We'd go around a panel, get around what we normally have to do in terms of follow precedent, and say, oh, we did an in the round and we flanked you. Now we have Maryland to say it's okay to say you were wrong. Can you see how difficult that is and how improbable it is for an appellate court? Yes, Your Honor, but that is the right outcome here, and that is what circuit courts regularly do. I can give you an example, Your Honor. Court of Appeals? Yes, Your Honor. Which one? The circuit? Yes. In Troster v. Starbucks Corporation, this is a Ninth Circuit opinion. This is a 680 Federal Appendix 511. A prior... Federal Appendix? That means it's unpublished, which is not precedent. That means it's not in effect in that circuit. Your Honor, as is customary, when a question is certified, those decisions normally are not published. So the question certifying, the opinion certifying the question is not published. But what happened in that case, Your Honor, is a prior panel of the Ninth Circuit had determined that, as an eerie guess, under California law, that California would have adopted the Diminutiveness Exception in the Fair Labor Standards Act. A subsequent panel of the Ninth Circuit certified that question to the State Supreme Court, and the California Supreme Court said, no, you got it wrong. Under California law, we would not adopt the Diminutiveness Exception under the Fair Labor Standards Act. And so that is the appropriate course to take where a prior panel has gotten an issue of state law wrong. It should be left to the state courts to weigh in on that decision to get the right question. And here, we know that administrative remedies are available under Maryland state law because the Maryland Attorney General's Office, for years, in over a dozen cases, has been arguing to federal courts that its position in Maryland state law is clear that inmates can get remedies. And the best evidence that they can get remedies is that they have, in fact, gotten remedies. Under Ross v. Blake, the Supreme Court admonished courts to look at the, quote, facts on the ground. The facts on the ground here, if you look at the joint appendix in pages 375 to 391, Mr. Raymond Lee, who was involved in this exact incident, took the appropriate steps and went through the administrative process and got a remedy. Didn't the Crowder court also know that? They knew those facts? I mean, if we're applying the law to the facts, that's not something Maryland courts do for us, something we have to do. And Crowder knew about Mr. Lee. Crowder made an eerie guess based on the regulations. But what Crowder does is it says that the IGO acts ultra-virus, that the only way for a prisoner to get relief is for the IGO to act ultra-virus. And that's not how Maryland gives deference to administrative agencies. Under Maryland law, they give extreme deference to how an administrative agency interprets its own regulations. And so for a court to read the IGO's regulations as precluding review, when in fact the IGO regularly and consistently gives merits hearings when there's an IOU investigation, you can't conclude that remedies are unavailable when those are repeatedly available to prisoners. And in the case of Mr. Raymond Lee, he went through those steps and was able to get a remedy, notwithstanding the IOU investigation that was going on. And there's also regulations making it clear that the IGO was able to evaluate prisoner inmates' claims even when there is an IOU investigation. So I direct the court to Maryland Code 12.11.01.05. And in that provision, the IGO specifically references instances of how the IGO is supposed to handle a situation where it is notified of an IOU investigation. It talks about that process. And if it was the state of the law under Maryland state law that remedies are just not available, there would be no reason for those provisions to set out the process for what happens when there is an ongoing IOU investigation. And I think, too, the reason why this court should certify it to the Supreme Court is because federal courts are reaching opposite conclusions on whether or not IOU investigations preclude review. So in the lower courts, you have district courts who are going both ways on this issue. And when federal courts are apparently confused on an issue of state law, that is a quintessential example of an opportunity where this court should certify that question to the Maryland Supreme Court. And there's no reason why this court can't take that step of certifying the question. Under the Maryland Uniform Certification Act, those two requirements are satisfied here. And the fact of a prior panel decision on a state law issue does not. And if I could, Your Honors, I would just like to address the factors under Ross v. Blake. Are the Maryland district courts confused about this issue? There are district judges who have gone both ways on this issue, Your Honor. So I would say that that is an indication that they're confused on this issue. I thought they were pretty much on the same page. Your Honor, there have been decisions on both sides since Ross v. Blake. There have been district courts who have held that an IOU investigation forecloses review, and there have been district courts who have held that it does not. Surely no court has been confused after Crowder, though, right? Aren't they all on the same page now? Under Crowder, they would be bound by the state law holding. That is not the last resort for this panel. And where there has been confusion in district courts, it's worth it. And the state of Maryland has an interest in weighing in on this question, where federal courts are telling Maryland that its rules prevent it from providing relief when the state of Maryland has been telling federal courts that they do provide relief. And if we look briefly at the Ross v. Blake three factors, none of those factors support the conclusion that remedies are unavailable here. We start with whether it's a dead end or futility. The standard there is whether the prison officials are consistently unwilling to provide remedies. Here we know that they are consistently willing to provide remedies because they have. In the briefing before the Supreme Court, in fact, the Maryland Attorney General's office, You mean here in this case, they were willing to give him a hearing? If they properly exhausted the procedures, Your Honor, yes. So there's two ways you could go about this, that you can get a remedy. You can go through the standard ARP process. If you get a dismissal from the warden, you can appeal to the commissioner. If you get a dismissal from the commissioner, then you can appeal to the IGO. That's why the regulations say you can do it. The other way you can do it is you can do what Mr. Raymond Lee did in this case. And what he did is he went to the warden, he got a dismissal because of the IU investigation, and then he took that ARP dismissal, the paperwork, he sent it to the IGO, and then they proceeded to a merits hearing, and he ultimately received a remedy from the courts. And so we know you can get a remedy that way. The one thing you cannot do is you cannot do what Mr. Younger did, which is go straight to the IGO, not give them any indication that there was an ongoing IU investigation, and then try to take your case there in the first instance because under the regulations, you have to show the IGO that you've properly exhausted your remedies. If you don't give them the documents, there's no way for the IGO to even know that an IOU is going on, and there's no way for the IGO to know that the remedies have been exhausted. And the reason that's important is because Maryland has set up a system to put meritorious claims before the IGO. But the IGO has to be sure that the prisoner has gone through the appropriate channels in the first instance before taking up these claims. Otherwise, the IGO has no way to determine whether the prisoner is properly exhausted. And here, Your Honors, the IGO sent Mr. Younger three letters, three times told Mr. Younger, we've gotten this grievance, we need to understand whether or not you've gone through the ARP process. Please send us the documents showing this. And at one point, they even emailed the commissioner's office and asked the commissioner's office, do you have any record of him appealing the ARP? And the fact that they asked about whether he appealed to the commissioner's office just shows that the IGO wasn't sure what's going on because they didn't have the documents. They didn't have an ARP application to show this prisoner has gone through the first steps that are required to get administrative remedies. And so on those questions, on the Ross v. Blake, the first one we talked about was futility. Opaqueness, there's not really a question, Mr. Younger. So just to clarify, these Ross factors that you're talking about and these facts about what Mr. Younger did or didn't do, these are the exact same facts in Crowder, right? What Mr. Younger did to exhaust, exact same facts. And the Ross factors are the same Ross factors that I see the Crowder court going through in its opinion and resolving, right? The Crowder court. Right. The Crowder court. Yes. Your Honor. Is that correct? No, Your Honor. The Crowder court looked specifically at the state law question. Did state law preclude that? The Crowder court. Oh, I thought they were resolving this case under the PLRA. Here it says the Prison Litigation Reform Act requires proper exhaustion, right? Wasn't it about the PLRA? Yes, but the predicate question under the PLRA and the question that Crowder answered was a state law question. Does Maryland law just preclude relief under its regulations? And that state law question is what animated that decision. And so they didn't get to the traditional analysis under the Ross v. Blake factors because they were looking entirely at that issue of Maryland state law. And that is why this is a proper question for certification. Because as federal courts continue to tell Maryland that it doesn't afford its inmates relief, notwithstanding those provisions, I'd like to reserve my remaining time for rebuttal. Do you speak for the Maryland Attorney General? The Maryland Attorney General did. We are counsel with the Maryland Attorney General's office. We have been, Your Honor. I'm sorry? Yes, Your Honor. The answer is yes. Your position? The Attorney General's position is your position? Yes, Your Honor. Mr. Morse? May it please the Court, Samuel Morse on behalf of the appellee Kevin Younger. This court should deny Lieutenant Dupree's motion to certify a question to the Supreme Court of Maryland and affirm the judgment below based on binding circuit precedent decided by this court last August in Younger v. Crowder. Nevertheless, Lieutenant Dupree claims that this panel should ignore binding precedent because there is a novel determinative question of state law that must be certified and answered by the Supreme Court of Maryland. First, there is a controlling statute here, and there is no determinative question of state law such as would warrant certification under the Maryland Uniform Questions of Law Act. Second, Crowder is controlling. That is precedent, plain and simple, as Your Honors recognize. Third, even if there was not binding circuit precedent, the judgment below must be affirmed for one reason. Under Maryland law, when a prisoner initiates the administrative remedy process by filing an ARP in response to an officer's use of force, and there is also a pending IID or IIU investigation, Maryland law directs the warden to dismiss that ARP. That can be appealed, but as this court recognized in Crowder, those appeals are futile. The question here is not whether Mr. Younger had administrative remedies to exhaust. Crowder answered that question. The question here is really why shouldn't Younger control? And my friend on the other side was referencing that in Crowder, this court made an eerie guess, made a guess of what a state Supreme Court would hold. There was no eerie guess here. This was a plain application of law to facts, and the law being applied here was the PLRA as interpreted by the Supreme Court in Ross v. Blake. Your Honors, we're asking if any court in Maryland, any district court, has gone the other way. I believe there's been one judge that has gone the other way, and that was the district court judge who decided Ross v. Blake. It was eventually overturned by this court, which was then reversed by the Supreme Court. But nevertheless found that administrative remedies were not available to a prisoner in Maryland when there was a pending IID investigation. There are no state law issues here. There are controlling statutes, and the PLRA does not ask whether a remedy is available according to a state high court. It asks whether a remedy is available, and this court has the tools, as federal courts around the country do, to look at whether a state administrative process, laws and the regulations, afford a prisoner the ability to obtain relief. And I'll also note that federal appellate courts and district courts can certify questions sua sponte. No federal court here has identified a state law issue prior to this. There's been a lot of very smart people that have looked at this. This has gone up to the Supreme Court numerous times. It has never been raised that this is an issue of state law. And I'd also like to address the fact that another individual involved in the underlying incident here, Raymond Lee, was able to obtain $5,000. Mr. Lee went to the IGO, and the IGO heard his claim on the merits and issued him a reward of $5,000. This is at the joint appendix on page 380. For lack of a better term, the administrative law judge here went completely rogue. The IGO's award, the IGO is an appellate body. It does not find facts. It decides if a prior dismissal or decision was arbitrary or capricious or contrary to law. It is an appellate body, and the IGO recognized that in that decision, but went on to find facts in the first instance. And there are two possible explanations here for why that happened. Either the regulations are so confusing that inmates, wardens, the Department of Corrections, and the administrative law judges hearing these IGO appeals are all at a loss and do not understand what these regulations do and do not allow them to do, or there are administrative law judges that are sympathetic to inmates' claims that are willing to ignore clear language to award prisoners relief. And that's exactly what this court held in Younger v. Crowder, that the only hope here for a prisoner to exhaust his administrative remedies is to hope that a decision maker ignores clear regulations and statutory law. If the court has any questions regarding the merits of the administrative exhaustion process in Maryland, I'm happy to address those. If there are no questions, Mr. Younger asks that this court deny the motion to certify, apply the binding precedent in Crowder, and affirm the judgment below. Thank you, Your Honor. Thank you very much. Mr. Williams? Your Honor, I just want to start by clarifying my last answer. We do not speak on behalf of the Maryland Attorney General's Office. We were co-counsel with them, and our position is their position, but we do not speak for the Maryland Attorney General's Office. So I just want to clarify that point. If you want to get this right, you should certify this to the Maryland Supreme Court. For years and in more than a dozen cases, the Maryland Attorney General has been representing the federal courts that Maryland law affords remedies to inmates notwithstanding an I.I.U. investigation. We know that administrative remedies are available when there's an I.I.U. investigation because of what the Supreme Court in Ross called the facts on the ground. The facts on the ground show that not only is it undisputed that inmates regularly obtain remedies despite an I.I.U. investigation, but an inmate in this very incident went through the administrative appeals process and got a remedy. Mr. Younger knew what to do in this case. He testified in a joint appendix at 394 to 395 that he knew this process. He knew what to do. And despite what he said, we know that he knew that he needed to go to the I.G.O. because he, in fact, went to the I.G.O. He filed something with the I.G.O. He just didn't do what was required. He didn't do what Mr. Raymond Lee did in order to get his remedies. Because Mr. Younger knew what to do and tried to do what he was required to, there's no question that he was able to get administrative remedies if he would have followed through on what the regulations specify that he should have done and he would have gotten the remedies that the state of Maryland wanted him to be able to pursue. If there are no other questions, we will submit on the briefs. Thank you, Mr. Williams. We appreciate it. We'll come down in our brief counsel, and then we'll proceed to our next case.
judges: Robert B. King, Roger L. Gregory, Allison J. Rushing